UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. __1:20mj03176 Reid - 3CCD__

UNITED STATES OF AMERICA

v.

SRI KAJAMUKAM CHELLIAH,

         **Defendant.**
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  ✓ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  ___ Yes  ✓ No

                                              Respectfully submitted,

                                              ARIANA FAJARDO ORSHAN
                                              UNITED STATES ATTORNEY

                BY: _/s/ Brian Dobbins_____

                                              BRIAN DOBBINS
                                              ASSISTANT UNITED STATES ATTORNEY
                                              District Court No. A5501182
                                              99 N.E. 4th Street
                                              Miami, Florida 33132
                                              Tel:    (305) 961-9304
                                              Fax:    (305) 536-4676
                                              Email:  Brian.Dobbins@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

United States of America
v.
SRI KAJAMUKAM CHELLIAH,
a/k/a "Mohan"

*Defendant(s)*

Case No. 1:20mj03176 Reid - 3CCD

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 1, 2019 - October 10, 2019__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida, and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 USC §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(i), 1324(a)(1)(A)(iv), 1324(a)(1)(B)(i). | Conspiracy to bring aliens to the United States, and to encourage and induce aliens to come to, enter, and reside in the United States, for commercial advantage and private financial gain. |
| 8 USC § 1324(a)(2)(B)(ii); and 18 USC § 2. | Attempts to bring, and aiding and abetting the attempts to bring, aliens to the United States for commercial advantage and private financial gain. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Amrou A. Fudl, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __Face Time__ (specify reliable electronic means)

Date: July 16, 2020

_____
*Judge's signature*

City and state: Miami, Florida

Lisette M. Reid, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Amrou A. Fudl, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since 2013. I am currently assigned to the Human Smuggling Group in the HSI Miami Field Office, where I am responsible for conducting investigations regarding violations of federal laws, particularly those laws found in Titles 8, 18, 19, and 21 of the United States Code, including violations of Title 8, United States Code, Section 1324, relating to human smuggling. Prior to this assignment, I was an HSI Special Agent in Laredo, Texas, where I conducted investigations as the lead case agent relating to drug smuggling/trafficking, weapons violations, border violence/kidnappings, and human smuggling.

2. This Affidavit is submitted in support of a criminal complaint charging that Sri Kajamukam CHELLIAH, also known as "Mohan," (a) knowingly conspired both to bring aliens to the United States at a place other than a designated port of entry and at a place other than as designated by the Commissioner, knowing that such persons are aliens, for the purpose of commercial advantage and private financial gain, and to encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence, is and will be in violation of the law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(i), 1324(a)(1)(A)(iv), and 1324(a)(1)(B)(i); and (b) attempted to bring, and aided and abetted the attempts to bring, six aliens to the United States, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United

States, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.

3. The statements contained in this Affidavit are based on my personal knowledge, as well as information provided to me by other law enforcement officers and law enforcement personnel. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include every fact known to me in connection with this investigation. I have only set forth the facts that I believe are necessary to establish probable cause. Where the contents of documents or the actions, statements and conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

## PROBABLE CAUSE

4. CHELLIAH is a Canadian citizen and a native of Sri Lanka.

5. On October 10, 2019, authorities of the Turks and Caicos Islands ("TCI") interdicted a sloop that was travelling in TCI territorial waters, approximately six nautical miles off the coast of Providenciales, TCI. The sloop was carrying approximately 154 undocumented aliens ("UDAs"), including CHELLIAH and approximately 28 Sri Lankan nationals.

6. CHELLIAH was detained and arrested by TCI authorities. He was subsequently convicted in TCI of crimes relating to unlawful entry and assisting unlawful entry into TCI and was sentenced to a term of imprisonment. CHELLIAH is scheduled to be released from detention by TCI on or about July 19, 2020.

7. Following the October 10, 2019 interdiction, HSI interviewed the Sri Lankan passengers who had been traveling aboard the sloop. As set forth below, HSI's investigation has revealed that CHELLIAH, together with others, had made arrangements with the Sri Lankan passengers to smuggle them to Canada in exchange for monetary payments; that the intended route

to Canada for approximately half the Sri Lankan passengers was through the United States; and that the trip culminating in the sloop's interdiction was part of that smuggling operation.

Confidential Witness 1

8. Confidential Witness 1 ("CW-1") is a Sri Lankan citizen. In or around late 2016, CW-1 agreed to pay CHELLIAH approximately $65,000 (CAD[1]) to transport CW-1 from Sri Lanka to Canada. CHELLIAH agreed to reduce that fee if CW-1 helped him with smuggling other travelers. While in Sri Lanka, CW-1 assisted CHELLIAH with various tasks, including collecting the passports of other migrants who wanted to travel to Canada and booking hotels in the Caribbean. CW-1 heard CHELLIAH tell one group of travelers that they would fly to the Bahamas, take a boat to Miami, Florida, drive to Buffalo, New York, and enter Canada over land.

9. In or around July 2019, CW-1 traveled to Port-au-Prince, Haiti, with three other Sri Lankans, including Confidential Witness 4 and Confidential Witness 6. CW-1 stayed at a hotel in Port-au-Prince with other Sri Lankans seeking to migrate to Canada. CHELLIAH met the Sri Lankans at the hotel, and over subsequent months, CHELLIAH arranged for them to stay at, and traveled with them to, various places in Haiti. CHELLIAH informed CW-1 and the other migrants of two alternative routes for traveling to Canada: they would either fly to Canada or take a boat from the Bahamas to Miami, Florida, drive to Buffalo, New York, and cross over land into Canada. In reference to the latter, CHELLIAH said that a person whom CHELLIAH identified by first name ("Co-Conspirator 1") was waiting in the Bahamas with a boat and that they would pay the person a sum of money upon arrival in Miami.

10. In or around early October 2019, CHELLIAH chartered a flight to the Bahamas where Co-Conspirator 1 was waiting to take the travelers to Miami but, due to a strong storm,

---

[1] "CAD" refers to Canadian dollars; "USD" refers to U.S. dollars.

canceled the flight and arranged for boat travel to TCI instead. CW-1 heard CHELLIAH explain again that some migrants would travel from there to the Bahamas and on to Miami with Co-Conspirator 1, while others might fly directly to Canada. CW-1 was aboard the sloop with CHELLIAH that was interdicted on October 10, 2019, before that additional travel could occur. CW-1 subsequently identified CHELLIAH from a photo array.

Confidential Witness 2

11.     Confidential Witness 2 ("CW-2") is a Sri Lankan citizen. In or around late 2017, CW-2 arranged to pay Co-Conspirator 2, who was a Canadian citizen and Sri Lankan native, approximately $21,000 (USD) to get him from Sri Lanka to Canada because CW-2 was unable to get a visa to travel to Canada. CW-2 paid the money to Co-Conspirator 2's relative. CW-2 traveled from Sri Lanka to Haiti through multiple countries, arriving in Port-au-Prince on or about January 5, 2018. CW-2 was met by an individual who drove him to a hotel, where CW-2 stayed with other Sri Lankans who had made arrangements with Co-Conspirator 2 to get to Canada.

12.     Co-Conspirator 2 told CW-2 that CHELLIAH would get CW-2 from Haiti to Canada. In or around late January 2018, CHELLIAH met CW-2 at CW-2's hotel. CHELLIAH later provided CW-2 with a fraudulent Canadian passport that was in another person's name but contained a photograph of CW-2 that CHELLIAH had arranged to be taken in Haiti. At CHELLIAH's direction, CW-2 traveled from Haiti to Kingston, Jamaica, where CW-2 was to board a plane to Canada. CW-2 was arrested in Jamaica and ultimately detained there for more than three months.

13.     After being released, CW-2 returned to Haiti, where CW-2 paid another individual, a female citizen of Guyana ("Guyanese Smuggler"), $5,000 (USD) to smuggle CW-2 to Canada

4

through the Bahamas, Miami, and Buffalo. That attempt resulted in CW-2's arrest in the Dominican Republic, where CW-2 was detained for several months.

14. After being released from Dominican custody, CW-2 returned to Haiti and reached an agreement with CHELLIAH for CHELLIAH to smuggle CW-2 from Haiti to Canada in exchange for the payment of $40,000 (CAD) upon CW-2's arrival in Canada. CHELLIAH told CW-2 that CW-2 would travel by boat to the Bahamas and then by boat again to Miami, where CW-2 would need to walk a short distance to meet an individual who would drive CW-2 to Buffalo, New York; CW-2 would then go to Canada.

15. CW-2 was on the sloop with CHELLIAH when it was interdicted by TCI authorities. CW-2 subsequently identified CHELLIAH from a photo array.

Confidential Witness 3

16. Confidential Witness 3 ("CW-3") is a Sri Lankan citizen. In 2017, CW-3's family paid approximately $38,000 (USD) to Co-Conspirator 2 to smuggle CW-3 to Canada from Sri Lanka. On or about October 6, 2017, CW-3 flew from Colombo, Sri Lanka, to Quito, Ecuador (through several countries) and stayed there for approximately three months. When CW-3 refused to travel north on a route Co-Conspirator 3 directed CW-3 to take, Co-Conspirator 3 arranged for CW-3 to travel to Haiti and meet up with CHELLIAH.

17. Upon arriving in Haiti, CW-3 went to a hotel in Port-au-Prince and joined a group of other Sri Lankans. CW-3 paid CHELLIAH approximately $2,400 (USD) to smuggle CW-3 to Canada from Haiti. In or around February 2018, CHELLIAH provided CW-3 with a fraudulent Canadian passport and arranged for CW-3 to travel to Kingston, Jamaica, where CW-3 would board a flight to Canada. CW-3 was arrested in Jamaica and detained for several months.

18. After being released, CW-3 returned to Haiti and paid Guyanese Smuggler $5,000 (USD) to smuggle CW-3 to Canada. CW-3 was to travel on the same trip, and via the same Bahamas-Miami-Buffalo route, as CW-2. That attempt also resulted in CW-3's arrest in the Dominican Republic, where CW-3 was detained for several months.

19. As did CW-2, CW-3 returned to Haiti after being released from Dominican custody and reached an agreement with CHELLIAH for CHELLIAH to smuggle CW-3 from Haiti to Canada in exchange for the payment of $40,000 (CAD) upon CW-3's arrival in Canada. During the months that followed, CW-3 and approximately 27 other Sri Lankans were moved between houses in Haiti. CHELLIAH told the group that it would be split up: half would go to Canada though the United States and the other half would fly directly to Canada from the Bahamas. CHELLIAH said that the U.S. route involved traveling by boat from the Bahamas to Miami, onto Buffalo, and then to Canada. CW-3 was in the group taking the U.S. route because CW-3's passport had been seized by Dominican authorities.

20. CW-3 was on the sloop with CHELLIAH when it was interdicted by TCI authorities. CW-3 subsequently identified CHELLIAH from a photo array.

Confidential Witness 4

21. Confidential Witness 4 ("CW-4") is a Sri Lankan citizen. In 2019, CW-4 reached an agreement with CW-1 for CW-1 to help smuggle CW-4 from Sri Lanka to Canada in exchange for 50 lakhs, with 10 lakhs paid upfront.[2] CW-1 agreed to take CW-4 to Haiti and said that CHELLIAH, who was referred to as "Mohan," would arrange to get CW-4 to Canada. CW-4 traveled with CW-1 and two others to Haiti, arriving on or about July 9, 2019. The group went to

---

[2] My understanding is that one lakh is equal to 100,000 Sri Lankan rupees and that 50 lakhs is equal to approximately $27,000 (USD).

a hotel in Port-au-Prince, where CW-4 met CHELLIAH and paid him approximately $2,500 (USD) in "show money" – money that CHELLIAH asked for and that CW-1 had said CW-4 would need to pay.

22.     CW-4 stayed at various houses in Haiti with other Sri Lankans, as arranged by CHELLIAH.  CHELLIAH told the group that some would go directly to Canada and the others would go to Canada through the Bahamas and Miami; CHELLIAH told CW-4 that CW-4 would take the U.S. route.  CHELLIAH said that, if they made it to Miami, they would get arrested but they could pay bond to get released and stay in the United States, which would allow them to make their way to Canada.  CHELLIAH ordered them not to single him (CHELLIAH) out if they got arrested because he would be put in jail for 20 years; CHELLIAH said that he had previously spent five years in jail in the United States.

23.     A search of U.S. criminal records confirms that CHELLIAH was sentenced to 60 months' imprisonment in February 2012 after pleading guilty in the Southern District of Florida to conspiracy to encourage and induce aliens to enter the United States and three counts of bringing aliens to the United States for commercial advantage and private financial gain. *United States v. Sri Kajamukan Chelliah*, No. 1:11-cr-20735-MGC, Doc. 33 (S.D. Fla. Feb. 16, 2012). Approximately nine years earlier, CHELLIAH pleaded guilty in the Southern District of New York to conspiracy to commit alien smuggling, for which he sentenced to 18 months' imprisonment. *United States v. Chelliah Sri Kajamukam*, No. 1:02-cr-1248-LAP, Doc. 16 (S.D.N.Y. Mar. 25, 2003).

24.     Before leaving Haiti, CW-4 asked CHELLIAH that CW-4 be allowed to return to Sri Lanka because one of CW-4's relatives was sick.  CHELLIAH got angry and physically attacked CW-4 whenever CW-4 brought up going back to Sri Lanka; one time, CHELLIAH struck

7

CW-4 with a bottle on the shoulder. CW-4 eventually apologized to CHELLIAH for saying CW-4 wanted to return to Sri Lanka.

25.    CW-4 traveled with CHELLIAH and approximately 27 other Sri Lankans, among other UDAs, aboard the sloop that was interdicted by TCI authorities. CW-4 saw CHELLIAH talking to the captain of the boat during the trip. When TCI authorities interdicted the boat, CW-4 saw CHELLIAH tear up some paper or identification and throw, or attempt to throw, cell phones into the water. CHELLIAH laid down in the boat and said that they would put him in jail for 20 years.

26.    While in TCI detention, CHELLIAH sent the Sri Lankans notes and yelled at them, directing them not to say where the group had been heading. CW-4 identified CHELLIAH from a photo array.

Confidential Witness 5

27.    Confidential Witness 5 ("CW-5") is a Sri Lankan citizen. CW-5 agreed to pay Co-Conspirator 3, a citizen of Canada and native of Sri Lanka, $65,000 (CAD) in exchange for smuggling CW-5 from Sri Lanka to Canada. CW-5 was unable to get a visa to enter Canada lawfully. CW-5 agreed to pay Co-Conspirator 3 after CW-5 arrived in Canada.

28.    CW-5 left Sri Lanka in or around September 2019 and flew to Havana, Cuba, through Russia. CW-5 missed CW-5's next flight and called Co-Conspirator 3, who said to contact an individual later identified as CHELLIAH. CW-5 spoke to CHELLIAH who made arrangements for CW-5 to fly to Haiti. CHELLIAH also said that two men would meet CW-5 at the airport.

29.    Upon arriving in Haiti, CW-5 was met at the airport by two men who drove CW-5 to a house where other Sri Lankans were staying. CW-5 met CHELLIAH at the house. When CW-5 asked CHELLIAH about CW-5's travel route to Canada, CHELLIAH told CW-5 to speak

to Co-Conspirator 3. Co-Conspirator 3 told CW-5, over the phone, that CW-5 would travel by sea to the Bahamas and then by sea to Miami, Florida; from there, CW-5 would be driven to a church in Buffalo, New York, where someone would escort CW-5 to Canada. Co-Conspirator 3 said that if CW-5 was arrested in Miami, CW-5 would be released on bond. While in Haiti, CW-5 made a payment of approximately $3,000 (CAD) to CHELLIAH for a passport.

30. CW-5 was moved to other houses in Haiti before he boarded a sloop with CHELLIAH and other Sri Lankans that was to take him to the Bahamas. The boat was interdicted by TCI authorities. CW-5 subsequently identified CHELLIAH in a photograph.

Confidential Witness 6

31. Confidential Witness 6 ("CW-6") is a Sri Lankan citizen. CW-6 reached an agreement with Co-Conspirator 3 to be taken from Sri Lanka to Canada in exchange for paying 60 lakhs (approximately $32,000 (USD)). CW-6 left Sri Lanka on or about July 7, 2019, and traveled to Haiti with CW-1 and CW-4. Upon arriving, the group went to a hotel in Port-au-Prince, where CW-6 met CHELLIAH. CHELLIAH asked for approximately $2,400 (USD), which CW-6 paid after confirming with Co-Conspirator 3 that CW-6 was to pay CHELLIAH.

32. CW-6 believed that CW-6 would be traveling to Canada using a sea route. CW-6 was traveling with CHELLIAH and other Sri Lankans aboard the sloop that was interdicted by TCI authorities. CW-6 subsequently identified CHELLIAH from a photo array.

33. At the time of the October 10, 2019 interdiction, CW-1, CW-2, CW-3, CW-4, CW-5, and CW-6 did not have authority to enter or remain in the United States lawfully. All of them were subsequently paroled into the United States, where they currently reside.

34. Based on the foregoing, I respectfully submit that there is probable cause to believe that Sri Kajamukam CHELLIAH, also known as "Mohan," did knowingly conspire both to bring

aliens to the United States at a place other than a designated port of entry and at a place other than as designated by the Commissioner, knowing that such persons are aliens, for the purpose of commercial advantage and private financial gain, and to encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence, is and will be in violation of the law, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I), 1324(a)(1)(A)(i), 1324(a)(1)(A)(iv), and 1324(a)(1)(B)(i).

35. Further, based upon the foregoing, I respectfully submit that there is probable cause to believe that Sri Kajamukam CHELLIAH, also known as "Mohan," attempted to bring, and aided and abetted the attempts to bring, CW-1, CW-2, CW-3, CW-4, CW-5, and CW-6 to the United States, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States, for the purpose of commercial advantage and private financial gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii), and Title 18, United States Code, Section 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Amrou A. Fudl
Special Agent
Homeland Security Investigations

Attested to by the Applicant in accordance with the requirements of
Fed. R. Crim. P. 4.1 by FaceTime this 16th day of July, 2020, in Miami, Florida.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA